# NO. 12-21-00099-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 145TH* |
| *R.M., C.W. & L.W.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *NACOGDOCHES COUNTY, TEXAS* |

## MEMORANDUM OPINION

A.M. appeals the termination of her parental rights. In five issues, she challenges the legal and factual sufficiency of the evidence to support the trial court's judgment. We affirm.

## BACKGROUND

A.M. is the mother of R.M., C.W., and L.W. A.S. is the father of R.M.,[1] and J.W. is the father of C.W. and L.W.[2] On October 15, 2019, the Department of Family and Protective Services (the Department) filed an original petition for protection of R.M., C.W., and L.W., for conservatorship, and for termination of A.M.'s, A.S.'s, and J.W.'s parental rights. The Department was appointed temporary managing conservator of the children, and the parents were allowed limited access to and possession of the children.

---

[1] During the final trial, A.S. executed an affidavit of relinquishment of parental rights. At the conclusion of trial, the trial court found, by clear and convincing evidence, that (1) A.S. filed an affidavit of relinquishment of parental rights in accordance with Section 161.001(b)(1)(K) of the Texas Family Code; and (2) termination of the parent-child relationship between A.S. and R.M. was in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between A.S. and R.M. be terminated. A.S. is not a party to this appeal.

[2] At the conclusion of trial, the trial court found, by clear and convincing evidence, that J.W. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), (N), and (P) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between J.W., C.W., and L.W. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between J.W., C.W., and L.W. be terminated. J.W. is not a party to this appeal.

1

At the conclusion of a trial on the merits, the trial court found, by clear and convincing evidence, that A.M. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (O) and (P) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between A.M., R.M., C.W., and L.W. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between A.M., R.M., C.W. and L.W. be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2020); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. ***Glover v. Tex. Gen. Indem. Co.***, 619 S.W.2d 400, 401 (Tex. 1981); ***In re M.D.S.***, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. ***In re J.F.C.***, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. ***Id***.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. ***In re C.H.***, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. ***Id***. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. ***In re J.F.C.***, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. ***Nordstrom v. Nordstrom***, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 161.001(B)(1)(D) AND (E)

In her first and second issues, A.M. argues the evidence is legally and factually insufficient to terminate her parental rights pursuant to subsections (D) and (E) of Texas Family Code Section 161.001(b)(1).

## Applicable Law

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2020). Subsection (D) addresses the child's surroundings and environment. ***In re N.R.***, 101 S.W.3d 771, 775-76 (Tex. App.—

Texarkana 2003, no pet.). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.). Further, subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E). It is not necessary that the parent know for certain that the child is in an endangering environment; rather, awareness of the potential for danger and a disregard of the risk is enough to show endangering conduct. *Interest of J.H.,* No. 09-20-00056-CV, 2020 WL 4516860, at *10 (Tex. App.—Beaumont Aug. 6, 2020, no pet.); *Interest of E.S.*, No. 12-20-00282-CV, 2021 WL 2483788 at *3 (Tex. App.—Tyler June 17, 2021, no pet.). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

"Endanger" means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. *Ybarra*, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk. *In re N.R.*, 101 S.W.3d at 776. In other words, conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Interest of T.A.*, No. 12-20-00276-CV, 2021 WL 2182316 at *4 (Tex. App.—Tyler May 28, 2021, pet. denied) (mem. op.). We have previously concluded it is illogical to reason that

inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently a part of the "conditions and surroundings" of that place or home. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. *Id*.

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d at 811. Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well-being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Endangering conduct is not limited to actions directed towards the child. *Boyd*, 727 S.W.2d at 533. It necessarily follows that the endangering conduct may include the parent's actions before the child's birth and while the parent had custody of older children. *See id*. (stating that although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury); *see also In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur before the child's birth and both before and after the child has been removed by the Department. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

A parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re R.W.*, 129 S.W.3d at 739. Further, evidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being.

*See In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied); ***Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.***, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under subsection (E). ***Walker***, 312 S.W.3d at 617-18. A parent's drug use both before and after a child's birth is relevant to the issue of endangerment. ***Dupree v. Tex. Dep't of Protective & Regulatory Servs.***, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs. ***In re C.R.***, 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.); ***In re C.A.B.***, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

## Analysis

Macee Skillern testified that she is the Department caseworker assigned to this case. The Department received an emergency referral in September 2019 for neglectful supervision. The report stated that C.W. sustained critical injuries to her elbow and arm after being run over by a lawnmower operated by F.S. The children had been staying with C.W. and L.W.'s paternal great aunt and uncle, B.S. and F.S. C.W. was flown to Children's Medical Center in Dallas for treatment. C.W. and R.M., ages two and four, were riding on the deck of a riding lawnmower when C.W. fell off. C.W. underwent a skin graft and plastic surgery to repair her arm and elbow. When the Department became involved, R.M. and L.W. had ringworm as well as hand, foot, and mouth disease, which were untreated. C.W. was missing a "one-inch chunk of her hair in the back of her skull" that was unrelated to the lawnmower incident. A.M. and J.W. went to the hospital; however, the hospital's social worker was concerned about their interactions with C.W., partially because they gave her a lighter as a toy.

Skillern further testified that the children had been left in B.S. and F.S.'s care because A.M. and J.W. were homeless. Skillern opined that leaving the children in the relatives' care posed a danger. B.S. had requested A.M. give her consent to obtain medical treatment; however, A.M. never did. When asked why, A.M. stated, "I had no way to go up to where she was to consent." And when asked why she did not provide consent when she left the children, A.M.'s response was "Because I didn't have a pen or paper."

Because there were allegations of drug abuse, A.M. was required to complete the Alcohol and Drug Abuse Council (ADAC) program. A.M. did not complete the program in the one and

one-half years the Department worked with her. A.M failed to comply with random drug testing. Skillern testified that A.M. completed three drug tests prior to trial. In November 2019, her hair follicle test was positive for marijuana and her urinalysis was negative. In March 2020, both the hair follicle test and urinalysis were positive for marijuana. She also tested the day before trial but those results were not complete as of Skillern's testimony. Skillern testified that she asked A.M. to drug test eleven times in the previous three months and that she made it clear to A.M. that a refusal counts as a positive test. A.M. also failed to complete her psychological evaluation and the PADRES parenting program.

A.M admitted to a history of drug use. She further admitted to missing more than ten drug tests and that she knew and understood each one would be treated as a positive result. Although A.M. stated that J.W. is no longer using methamphetamine, J.W. tested positive for marijuana, methamphetamine, and amphetamine during the case. In addition, J.W. failed to complete his drug tests several times.

Skillern further testified that A.M. and J.W. lacked an adequate home for the children. The two lived together in a three bedroom, two bath, home. However, they blocked off the majority of the house with material "because the central heat and air is not consistent . . . and they have one window unit in the living room." The living room has been converted into a bedroom, and there is inadequate space for three more beds in that room. Therefore, the children would have no air conditioning or heat if placed in the house. The rest of the house is unfurnished. The couple also lacks reliable transportation.

A.M. has been employed part-time at Chili's for over a year. However, A.M. told Skillern that she struggles to pay her bills. For example, her phone has been turned off several times because she was not able to pay the bill.

A.M. also failed to maintain consistent contact with the children throughout the case. As of the time of trial, A.M. visited the children once in the three months prior. And during that visit, she focused the majority of her attention on a single child. A.M. conceded that her relationship with the children needs improvement but failed to explain why she had not attempted to improve that relationship during pendency of the case.

Skillern further opined that leaving the children in the care of B.S. and F.S. was dangerous to the children. B.S. intervened in the suit, seeking to have the children placed with her. However, the home study showed that B.S. and F.S.'s home was not a viable choice.

Skillern's program director denied the request over concerns in the home study, the location of the home in relation to B.S.'s son, and F.S.'s history. B.S.'s son has a substance abuse history and a recent incident of possession of a controlled substance. The children would have immediate access to his property and land. F.S. is currently on probation for possession of methamphetamine, which bars the children from being placed in the home. Skillern also noted that the children were in B.S.'s care when C.W. was severely injured and all of the children lacked medical attention.

The trial court could have considered and given great weight to the evidence of A.M.'s pattern of irresponsible choices such as ongoing instability and drug use, failure to maintain contact with the children, failure to complete her court-ordered services, and leaving the children with B.S. and F.S. *See In re J.O.A.*, 283 S.W.3d at 346; *In re S.I.H.*, No. 02-11-00489-CV, 2012 WL 858643, at *5 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.). In addition, the trial court was permitted to find that A.M.'s conduct would subject the children to a life of uncertainty and instability, which endangers their physical and emotional well-being. *See In Interest of A.R.O.*, 556 S.W.3d 903, 911-12 (Tex. App.—El Paso 2018, no pet.). Furthermore, the evidence showed that A.M. knew the children needed medical care but failed to give B.S. the necessary tools to get them medical attention or the authority to address medical issues. *See Interest of N.P.*, No. 09-20-00218-CV, 2021 WL 203339, at *6 (Tex. App.—Beaumont Jan. 21, 2021, pet. denied) (mem. op.). And finally, the trial court could have considered the evidence of A.M.'s drug use to support an endangerment finding. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

After reviewing the evidence in the light most favorable to the judgment, we hold that a reasonable factfinder could have formed a firm belief or conviction that A.M. knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Therefore, we hold that the evidence is legally and factually sufficient to support termination of A.M.'s parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b). Accordingly, we overrule A.M.'s first and second issues as to subsections (D) and (E) of Texas Family Code

Section 161.001(b) and need not address her third and fourth issues regarding termination under subsections (O) and (P). *See* TEX. R. APP. P. 47.1.

<u>**BEST INTERESTS OF THE CHILD**</u>

In A.M.'s fifth issue, she argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the children's best interest. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2003, no pet.). In other words, the

9

best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d at 814. Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d at 507. But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29. We apply the statutory and *Holley* factors below.

## Analysis

At the time of trial, R.M., C.W., and L.W. were ages five, three, and two years old. Although the Department made visits with the children available to A.M., she failed to consistently visit or contact the children. Prior to trial, the last time A.M. visited the children was March 2021, three months prior. A.M. attended no virtual visits and did not request visits with the children. A.M. conceded that her relationship with her children could be improved:

> My relationship with my children honestly I feel needs improvement. When I did last see my children – the first time I seen them, they'd been moved to Nac[ogdoches]. My son [R.M.] automatically asked who I was. [C.M.], on the other hand, was a little hesitant. And [L.M.] – he's still young. I do believe my relationship needs improvement with him.

However, she was unable to explain why she did not attempt to improve that relationship during the pendency of the case. She further testified that her lack of participation throughout the case, as well as her history, does not support that she will do what is best for the children.

The children are thriving in their foster placements, who wish to adopt them. L.W. and C.W. are placed together, and R.M. is in his own placement. The placements are less than forty miles apart. Furthermore, the placements have completed sibling visits outside the Department's scheduled visits, which leads Skillern to believe the caregivers would "welcome and encourage" visits between the children.

As discussed above, the evidence reflected that A.M. tested positive for drugs, had numerous missed tests, and did not complete the services required of her. At the time the Department became involved, A.M. and J.W. were homeless and had left the children with F.S. and B.S. F.S. had been convicted of possession of methamphetamine and was on probation. Under the supervision of F.S., C.W. suffered severe injuries after falling off a riding lawnmower with R.M. While A.M. and J.W. visited C.W. in the hospital, the hospital social worker was

concerned about their hygiene and judgment. The couple gave C.W. a lighter as a toy. As discussed, A.M. failed to give consent for B.S. to seek and obtain medical treatment for the children.

At the time of trial, A.M. was employed but had difficulty paying her bills. And A.M.'s residence lacks furniture and heating and air conditioning for the children's rooms if they were returned to her care. A.M. resides with J.W., who tested positive for methamphetamine, amphetamine, and marijuana during the case and missed several drug tests.

After viewing the evidence in the light most favorable to the trial court's best interest finding and applying the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of A.M.'s parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Although some evidence might weigh against the finding, such as A.M.'s current stability in having a job and a residence, this evidence is not so significant that a reasonable fact finder could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating A.M.'s parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule A.M.'s fifth issue regarding best interest.

## DISPOSITION

Having overruled A.M.'s first, second, and fifth issues, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered October 20, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 20, 2021**

**NO. 12-21-00099-CV**

**IN THE INTEREST OF R.M., C.W. & L.W., CHILDREN**

Appeal from the 145th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C1935217)

THIS CAUSE came to be heard on the appellate record and brief(s) filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*